IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BAMFORD, INC., a Nebraska business corporation, | ) ) ) | |
| Plaintiff, | ) ) | 8:13CV200 |
| v. | ) ) | |
| REGENT INSURANCE COMPANY, a Wisconsin business corporation, | ) ) ) ) | MEMORANDUM AND ORDER |
| Defendant. | ) ) | |

      This matter is before the Court on two related motions. The first motion (Filing No. 94) filed by the defendant is to exclude the expert testimony of Rob Dietz ("Dietz") pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The second motion (Filing No. 116) filed by the plaintiff is to compel discovery from the defendant. The motions have been fully briefed. After review of the motions, briefs, indices of evidence, and relevant case law, the Court finds as follows.

I.    BACKGROUND

      Bamford, Incorporated ("Bamford") is a commercial contractor of plumbing, heating, and fire sprinkler systems in Kearney, Nebraska (Filing No. 1, ¶ 1). Bamford purchased automobile liability insurance policies from Regent Insurance Co. (*Id.* at ¶¶ 6, 7). On May 11, 2009, one of Bamford's employees was involved in a serious automobile collision in Dawson County, Nebraska (*Id.* at ¶¶ 8, 9). The accident caused serious injury to the Davises (hereinafter "third persons") who brought claims

against Bamford (*Id*. at ¶ 10). Regent maintained responsibility over the investigation and settlement of the claims at their sole discretion (*Id.* at ¶¶ 6, 7).

Prior to trial, Regent denied numerous early offers from the third persons to settle the case below the $6,000,000 policy limit (*Id.* at ¶¶ 11, 13). The plaintiffs received a $10,621,757.18 verdict against Bamford; however, the parties elected to settle the case for less (*Id*. at ¶ 14). In the end, Regent paid its policy limit and Bamford paid $1,999,999.49 out-of-pocket pursuant to the settlement (*Id*. at ¶ 16). Bamford alleges a breach of a fiduciary duty to handle third party automobile personal injury claims with good faith and fair dealing (*Id.* at ¶¶ 18-27).

II. LEGAL STANDARD

"The admissibility of expert testimony in diversity cases is governed by federal law." *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005). Federal Rule of Evidence 702 provides the following:

> [i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, the court acts as a gatekeeper to determine "whether the witness is qualified to offer expert testimony." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 570 (8th Cir. 2009) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). The Eighth Circuit has determined that a district court should apply a three-part test when screening testimony under Rule 702:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal citations and quotations omitted). The proponent of the expert testimony bears the burden of proving its admissibility by a preponderance of the evidence. *Id.*

The first inquiry is whether the proposed testimony is relevant. *Daubert*, 509 U.S. at 591. Relevant testimony is testimony which "logically advances a material aspect" of a party's case. *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999).

Next, the witness' qualifications are considered. An expert must possess the "knowledge, skill, experience, training

or education sufficient to assist the trier of fact." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (citation and internal quotation marks omitted). This standard is satisfied when the expert's testimony "advances the trier of fact's understanding to any degree." *Id.* Federal Rule of Evidence 702 "requires that the area of the witness's competence matches the subject matter of the witness's testimony." *Id.* at 1101 (citation and internal quotation marks omitted).

Neither *Daubert* nor its progeny preclude experience-based testimony and trained experts may form conclusions by extrapolating from existing data. *See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997). An expert's opinion testimony is inadmissible, however, where it is connected to existing data only by the ipse dixit, or word alone, of the expert. *Joiner*, 522 U.S. at 146.

Last, the reliability of the testimony must be measured to determine whether it will be helpful to the jury. An expert's qualification and experience alone are not sufficient to render his testimony relevant. *Id.* It must assist the trier of fact, and "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262–63.

III. DISCUSSION

Dietz possesses fourteen years of experience with one insurance company. Regent argues Dietz's experience makes him unable to competently testify regarding Regent's actions in this

-4-

case.  Filing No. 100, at 10.  Bamford offers a number of examples of Dietz's qualifications.  Filing No. 104, at 2-7.  After review of the briefs, indices of evidence, and relevant case law, the Court finds Dietz's experience at least meets the basic qualifications to form an expert opinion in this case.

Next, Regent argues that Dietz ought to possess some experience in the Nebraska insurance industry before offering opinions regarding Nebraska insurance practices.  Bamford explains that Dietz's opinions are based upon industry standards.  The Court finds Regent's arguments are insufficient to bar Dietz's testimony and are best heard by the jury in the context of cross examination.

Finally, Regent moves to exclude several specific items from Dietz's testimony.  First, Regent moves to exclude Dietz's "legal conclusions."  After review of the arguments and specific statements, the Court will deny Regent's motion.

Second, Regent moves to exclude Dietz's testimony that he relied upon Nebraska state law in part to form his opinions.  Regent claims the statutes of Nebraska are irrelevant to this case because Nebraska bad-faith claims are based on case law.  However, Bamford responds that Dietz has only limited testimony regarding how Nebraska statutes affect insurers within the state.  After review of the arguments and law, the Court will deny Regent's motion.

Third, Regent moves to exclude an opinion that racial tension was an element of its actions during the previous trial.

Regent prepared a document outlining the claim and trial.  In that document, Regent posited how the jury was favorable to its defenses and, two sentences later, mentions that the jury was all white and that the plaintiffs were black.  The juxtaposition of Regent's belief that the jury was favorable with the racial identities of the jury provides sufficient basis for Dietz's opinion.  Therefore, Regent's motion will be denied.

Fourth, Regent's employees made a statement regarding the relative fiscal nature to Nebraska jury awards.  Regent described Nebraska juries as conservative.  Regent wishes to exclude Dietz's interpretation of conservative.  Though ostensibly relevant, Bamford makes clear that it will introduce what it perceives to be an insult against all Nebraskan juries to the jury in this case; and by delivering this perceived slight to the jurors, Bamford hopes to rally the jurors to its case through passion and prejudice.  Dietz's interpretation of Regent's statement is as follows:

> Regent "suggests that [Nebraska juries] are not capable of understanding or appreciating the effect of and consequences of serious injuries to another human being, and therefore are either less sensitive or somewhat incapable of awarding appropriate and fair sums of money in compensation to seriously injured people.

Filing No. 120, at 10-11 (citing the Dietz Report, at p. 18).  This is wild speculation.  For the foregoing reason, the Court will grant Regent's motion and will exclude the above quoted

opinion from the trial.  The Court does not exclude all evidence of the relative conservative nature of Nebraska juries.

Fifth, Regent seeks to exclude Dietz's opinion that Regent's Short-Term Incentive ("STI") program could cause a pernicious or perverse effect:  to encourage claims handlers to low-ball in their evaluation of claims.  Filing No. 104, at 29.  Regent employees who handled the Bamford claim had no financial incentive to low-ball the Bamford claim because one case does not affect whether Regent employees receive a bonus.  Nonetheless, Bamford insists that "bonus systems do not have to tie directly into a specific outcome in the claims handling of a specific case" in order for Dietz's opinion to be relevant to this case.  *Id.* at 30.  That is difficult to believe.  "[T]he proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires."  *Lauzon*, 270 F.3d at 686.  The proposed evidence is unhelpful, irrelevant, and confuses the facts of the case.  Therefore, the Court will grant Regent's motion and evidence of bonuses will be excluded.  Consequently, the Court will deny the plaintiff's motion to compel, which relates to STI bonus documents (Filing No. 116).

Sixth, the parties have reached an agreement as to the issue of misrepresentation.  Filing No. 120, at 12.

Seventh, Regent objects to four instances in Dietz's report in which he purportedly offers evidence of Regent's state

of mind. After reviewing the statements, briefs, and case law, the Court will deny Regent's motion to exclude this testimony.

Eighth and last, Regent objects to an excerpt from Dietz's report which details the purposes behind insurance. After reviewing the statements, briefs, and case law, the Court will deny Regent's motion to exclude this testimony.

IT IS ORDERED:

1) The defendant's motion (Filing No. 94) is granted in part and denied in part.

2) That portion of Dietz's report which interprets what Regent meant when it referred to Nebraska juries as conservative is excluded.

3) Dietz's opinion that Regent's Short-Term Incentive ("STI") program could cause a pernicious or perverse effect and evidence of bonuses is excluded.

4) The remainder of defendant's motion (Filing No. 94) is denied.

5) The plaintiff's motion to compel (Filing No. 116) is denied.

DATED this 3rd day of December, 2014.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court